**IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IYARE EGONMWAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06 C 4764 |
| v. | ) | |
| | ) | |
| COOK COUNTY SHERIFF'S | ) | |
| DEPARTMENT et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 27, 2007, Plaintiff Iyare Egonmwan filed a four-count First Amended Complaint

alleging a claim of race discrimination in violation of 42 U.S.C. § 1981 (Count I), an equal

protection claim based on race and gender discrimination pursuant to 42 U.S.C. § 1983 (Count

II), a retaliation claim in violation of Section 1981 (Count III),[1] and a retaliation claim in

violation of the First Amendment under Section 1983 (Count IV) against his former employer,

the Cook County Sheriff's Department, along with certain employees of the Cook County

Sheriff's Department.  Before the Court is Defendants' Motion for Summary Judgment pursuant

to Federal Rule of Civil Procedure 56.  For the following reasons, the Court grants Defendants'

motion in its entirety.

## BACKGROUND

### I.     Northern District of Illinois Local Rule 56.1

Because Defendants move to strike Egonmwan's Northern District of Illinois Local Rule

---

[1] Egonmwan voluntarily withdraws his Section 1981 retaliation claim as alleged in
Count III of the First Amended Complaint.  (R. 252-1, Resp. Brief, at 1 n.1.)

56.1 Statement of Additional Facts and his Response to Defendants' Local Rule 56.1 Statements, the Court starts with a review of the Local Rules as they relate to summary judgment motions. Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005). In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008). Pursuant to the Local Rules, the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3) response, but instead must rely on the nonmoving party's Local Rule 56.1(b)(3)(C) Statement of Additional Facts. *See id.* at 643 ("court does not abuse its discretion when it opts to disregard facts presented in a manner that does follow the Rule's instructions").

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,*

233 F.3d at 528. Moreover, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir. 2005); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1"). Finally, "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997); *see, e.g., Keri v. Board of Tr. of Purdue Univ.,* 458 F.3d 620, 630 (7th Cir. 2006).

With these standards in mind, the Court turns to the relevant facts of this case.

## II.    Relevant Facts

### A.    Parties

Plaintiff Iyare Egonmwan, a former correctional officer for the Cook County Sheriff's Department, is an African-American male residing in the Northern District of Illinois. (R. 233-1, Defs.' Rule 56.1 Stmt. Facts ¶¶ 1, 10.) The Cook County Sheriff's Department operates the Cook County Department of Corrections ("CCDOC") and the Cook County Sheriff's Police. (*Id.* ¶ 2.) During the relevant time period, Defendant Michael F. Sheahan was the elected Sheriff of Cook County, a position Sheahan held until December 2006. (*Id.* ¶ 3.) Defendant Callie Baird was the Executive Director of the CCDOC from July 2003 until November 2004. (*Id.* ¶ 4.) As of November 2002, Defendant Katie Harrison was the Superintendent of Division 4, a division of the CCDOC that housed female detainees. (*Id.* ¶ 5.) During the relevant time period, Defendant Scott Kurtovich was the CCDOC's Assistance Executive Director. (*Id.* ¶ 6.) Defendant Timothy Kaufman, deceased, was the Chief of the Internal Affairs Division ("IAD") for the CCDOC at all relevant times. (*Id.* ¶ 7.) Also during the relevant time period, Defendant

Miriam Rentas was an IAD investigator.  (*Id.* ¶ 9.)

**B.      Egonmwan's Sexual Harassment Allegations**

During the summer of 2001, Egonmwan was transferred from Division 9 to Division 4 of the CCDOC – an all female division – where Katie Harrison was the Superintendent.  (*Id.* ¶¶ 5, 11.)  On September 11, 2002, Egonmwan filed an internal sexual harassment complaint against Harrison.  (*Id.* ¶ 16; R. 278-1, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 11.)  During this same time period, Egonmwan was suspended for violating the CCDOC's Ethics and Standard of Conduct for an incident that occurred on April 17, 2001.  (*Id.* ¶ 14; Defs.' Stmt. Facts ¶ 18.)

**C.      Egonmwan's Criminal Investigation and Prosecution**

In March 2003, a female detainee gave Harrison a letter in which the detainee stated that certain correctional officers were engaging in sexual intercourse with her and other women detainees in Division 4.  (Defs.' Stmt. Facts ¶ 20.)  After Harrison received the letter, she forwarded it to Kurtovich, the CCDOC's Assistance Executive Director, and Kaufmann in IAD. (*Id.* ¶¶ 6, 7, 21.)  Thereafter, the IAD forwarded these allegations to the Cook County Sheriff's Police to investigate.  (*Id.* ¶ 22.)

Detectives from the Cook County Sheriff's Police conducted interviews of the female detainees.  (*Id.* ¶ 25.)  During the criminal investigation, many correctional officers were considered "suspects of interests."  (*Id.* ¶ 27.)  Also during the course of the investigation, Detectives for the Cook County Sheriff's Police submitted their investigation to the Felony Review Unit at the Cook County State's Attorney.  (*Id.* ¶ 28.)  Assistant State's Attorneys then began overseeing the investigation and conducted interviews of the female detainees in Division 4.  (*Id.* ¶ 29.)

On August 13, 2003, Egonmwan was arrested for the criminal offense of custodial sexual misconduct. (*Id.* ¶ 39.) On August 25, 2003, Sheriff Sheahan filed an administrative complaint seeking Egonmwan's separation from the CCDOC. (*Id.* ¶ 42.) Meanwhile, Egonmwan was indicted on September 15, 2003, by a grand jury and following a bench trial, was acquitted on August 3, 2004. (*Id.* ¶¶ 43, 52; Pl.'s Stmt. Facts ¶ 51.)

### D.    Merit Board Hearing and Determination

On July 27, 2004, the Merit Board held a hearing concerning the termination of Egonmwan's employment and continued the hearing until August 31, 2004, and September 29, 2004. (Defs.' Stmt. Facts ¶¶ 54, 55, 56.) The Merit Board resumed the hearing on December 1, 2004. (*Id.* ¶ 57.) On January 13, 2005, the Merit Board issued an order – finding by a preponderance of the evidence – that Egonmwan violated General Orders 3.8 and 4.1 and terminated his employment effective August 25, 2003. (*Id*. ¶ 62.) General Order 3.8 prohibits a CCDOC employee from engaging in sexual conduct with a person in custody. (*Id.* ¶ 70.) General Order 4.1 prohibits CCDOC employees from engaging in conduct unbecoming to a CCDOC employee. (*Id.* ¶ 71.) On February 5, 2005, the Merit Board informed Egonmwan that his employment was terminated. (Pl.'s Stmt. Facts ¶ 57.)

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Estate of Suskovich v. Anthem Health Plans of Va., Inc.,* 553 F.3d 559, 563 (7th Cir. 2009) (quoting Fed. R. Civ. P 56(c)). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts"). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

### I.     Race Discrimination Claims (Counts I and II)

In his First Amended Complaint, Egonmwan alleges a race discrimination claim in violation of 42 U.S.C. § 1981 (Count I) and a race discrimination claim in violation of the equal protection clause pursuant to 42 U.S.C. § 1983 (Count II). The Court addresses these claims together because the standards for proving intentional race discrimination under the equal protection clause also apply to Section 1981 race discrimination claims. *See Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 403-04 (7th Cir. 2007) (same standards apply to Title VII and Section 1981 discrimination claims); *Davis v. Wisconsin Dep't of Corr.*, 445 F.3d 971, 976 (7th

Cir. 2006) (same standards used for equal protection and Title VII actions). More specifically,

Egonmwan may prove intentional race discrimination by the direct method of proof or the

indirect burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Humphries,* 474 F.3d at 403-04. Here,

Egonmwan maintains that he can prove intentional race discrimination under both the direct and

indirect methods of proof.

### A.      Direct Method of Proof

"Under the direct method of proof, a plaintiff survives summary judgment by showing

sufficient evidence, whether it is labeled direct or circumstantial, on which a jury could find that

the adverse employment action in question was taken for a discriminatory reason." *Jones v. City*

*of Springfield, Ill.,* 554 F.3d 669, 671 (7th Cir. 2009). To clarify, "[d]irect evidence is evidence

which, if believed by the trier of fact, will prove the particular fact in question without reliance

upon inference or presumption" and "[c]ircumstantial evidence of discrimination is evidence

which allows the trier of fact to infer intentional discrimination by the decisionmaker." *Nichols*

*v. Southern Ill. Univ. – Edwardsville,* 510 F.3d 772, 781 (7th Cir. 2007) (citation omitted). "The

key to the direct method of proof is that the evidence, whether direct or circumstantial, points

directly to a discriminatory reason for the employer's action." *Hasan v. Foley & Lardner, LLP,*

552 F.3d 520, 527 (7th Cir. 2008) (citation and internal quotation marks omitted); *see also*

*Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 695 (7th Cir. 2006) ("circumstantial evidence must

point directly to a discriminatory reason for the termination decision.").

Direct evidence under the direct method of proof "usually requires an admission from the

decisionmaker about his discriminatory animus, which is rare indeed." *Nagle v. Village of*

*Calumet Park,* 554 F.3d 1106, 1114 (7th Cir. 2009); *see also Rudin v. Lincoln Land Cmty. Coll.,*

420 F.3d 712, 720 (7th Cir. 2005) (direct evidence is distinct type of evidence that directly

reveals intent to discriminate). Here, Egonmwan does not present evidence of a direct

admission, but instead presents circumstantial evidence. A plaintiff can establish an inference of

discrimination under the direct method of proof by relying on circumstantial evidence, including:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward
> or comments directed at other employees in the protected group; (2) evidence,
> whether or not rigorously statistical, that similarly situated employees outside the
> protected class received systematically better treatment; and (3) evidence that the
> employee was qualified for the job in question but was passed over in favor of a
> person outside the protected class and the employer's reason is a pretext for
> discrimination.

*Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007) (citation omitted); *see*

*also Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994). Under the direct method

of proof, the Court must consider "all of the [] evidence of discrimination to determine whether

the plaintiff's claim can survive summary judgment." *See Nagle,* 554 F.3d at 1115.

### 1. Defendants' Reasons for Egonmwan's Termination

Egonmwan argues that Defendants' reasons for terminating his employment were mere

pretext for race discrimination under the last category of circumstantial evidence, which is

substantially the same as the pretext evidence required under the indirect method of proof. *See*

*Venturelli v. ARC Community Servs., Inc.,* 350 F.3d 592, 601 (7th Cir. 2003). Defendants, on the

other hand, maintain that they terminated Egonwman's employment because he violated General

Order 3.8, that prohibits CCDOC employees from engaging in sexual conduct with a person in

custody, and General Order 4.1, which prohibits CCDOC employees from engaging in conduct

unbecoming to a CCDOC employee.

In the context of employment discrimination cases, pretext means a dishonest explanation, namely, a lie or phony excuse. *See Faas v. Sears, Roebuck & Co.,* 532 F.3d 633, 642 (7th Cir. 2008); *see also Kodl v. Bd. of Educ.,* 490 F.3d 558, 562 (7th Cir. 2007) (pretext is a deliberate falsehood). A plaintiff can establish pretext with "evidence that the employer's explanation is not credible." *Atanus v. Perry,* 520 F.3d 662, 674 (7th Cir. 2008) (citation omitted). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered." *Ptasznik,* 464 F.3d at 696 (citation omitted).

Here, Egonmwan argues that Defendants' reason for his termination is pretext because he was acquitted of the criminal charges against him based on the same alleged incidents. The heightened quantum of proof in criminal cases, beyond a reasonable doubt, however, is not the same standard of proof required under the Cook County Sheriff's Merit Board Act, 55 ILCS 5/3-7012, which is by a preponderance of the evidence. *See Sheahan v. Bianchi,* 296 Ill.App.3d 310, 311-12, 230 Ill.Dec. 864, 695 N.E.2d 73 (1998) ("sheriff need only establish its allegations against an employee by a preponderance of the evidence"); *Vanko v. Sheahan,* 278 Ill.App.3d 302, 306, 214 Ill.Dec. 946, 662 N.E.2d 512 (1996) ("Act requires [sheriff] to prove the justification of dismissal by a preponderance of the evidence"). Therefore, Egonmwan's argument that Defendants' reason for his termination was pretext for discrimination based on his acquittal in the criminal matter is without merit. *See Grames v. Illinois State Police,* 254 Ill.App.3d 191, 204, 192 Ill.Dec. 790, 625 N.E.2d 945 (1993) ("While the evidence may not have been sufficient to meet the burden of proof in a criminal proceeding, it meets the standard in an administrative proceeding.").

Meanwhile, Assistant State's Attorneys presented the following evidence at the Merit Board hearing: (1) detainee Washington testified that she observed another detainee, Acuna, perform oral sex on Egonmwan and that Egonmwan touched Washington's genitals; (2) Acuna testified that she performed oral sex on Egonmwan; (3) Acuna testified that she agreed to perform sexual acts with Egonmwan and that he was to pay her brother; (4) Acuna's brother testified that Egonmwan delivered money to him on two separate occasions; and (5) a CCDOC employee authenticated Egonmwan's employment and disciplinary records and testified about Egonmwan's assignments on the day that Acuna said she had sexual contact with him. (Defs.' Stmt. Facts ¶¶ 55, 58, 59, 60, 61.) Based on this evidence, the Merit Board found – by a preponderance of the evidence – that Egonwman violated the CCDOC's General Orders. Undeterred, Egonmwan argues that the Merit Board's proceeding was not fair or impartial. Egonmwan, however, had the opportunity to appeal the Merit Board's decision under the Illinois Administrative Review Act, but failed to do so. *See* 735 ILCS 5/3-101; *see also Michalowicz v. Village of Bedford Park,* 528 F.3d 530, 536 (7th Cir. 2008) ("Illinois courts have recognized that the factual findings of administrative bodies may be challenged by a claim of bias or prejudice").

In sum, viewing the evidence and all reasonable inferences in a light most favorable to Egonmwan – as the Court is required to do at this procedural posture – he has failed to present sufficient evidence raising a genuine issue of material fact for trial that Defendants' explanation for his termination is not credible or otherwise dishonest based on the acquittal of his criminal charges. *See Atanus,* 520 F.3d at 674; *Ptasznik*, 464 F.3d at 696. Therefore, Egonwman's pretext argument fails.

## 2. Legitimate Job Expectations

Next, Egonmwan maintains that he can establish that he was meeting Defendants' legitimate job expectations, which is part of the third category of circumstantial evidence explained in *Hemsworth. See id.* at 491. Defendants, however, contend that Egonmwan not only violated the CCDOC's General Orders by having sexual contact with female detainees while they were in custody, but that he was excessively absent from work. Egonmwan, on the other hand, presents evidence explaining his excessive absenteeism and notes that Defendants had given him a good performance evaluation.

The evidence of Egonmwan's good performance evaluation reveals that he received this evaluation before the CCDOC female detainee informed Harrison of the correctional officers' sexual misconduct and before any investigation into the CCDOC officers' sexual misconduct took place. (Pl.'s Stmt. Facts ¶ 1.) The relevant inquiry into Egonmwan's job performance history, however, is whether he was satisfactorily performing his job at the time of his termination, or, at the very least, during the investigation leading up to his termination. *See Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 635 (7th Cir. 2009); *see also Burks v. Wisconsin Dep't of Transp.,* 464 F.3d 744, 753 (7th Cir. 2006) (critical inquiry is employee's performance at time of termination). Also, whether Egonmwan thought he was satisfactorily performing his job duties is of no consequence because the proper inquiry mandates the Court to look through the eyes of his supervisors. *See Gates v. Caterpillar, Inc.,* 513 F.3d 680, 689 (7th Cir. 2008).

That leaves Egonmwan's explanation for his absenteeism, which Defendants dispute. Even if Egonmwan could refute Defendants' claim that he was unacceptably absent from work, this alone is insufficient to establish that Egonwman was performing to Defendants' legitimate job expectations under the direct method of proof – especially because the Merit Board found by

a preponderance of the evidence that Egonwman had inappropriate sexual conduct with detainees in custody. *See Faas,* 532 F.3d at 642 (legitimate job expectation and pretext determinations often merge and may be considered together).

### 3.    Similarly Situated Employees

Further, Egonmwan argues that similarly situated white officers were not criminally charged or terminated under the second category of circumstantial evidence. *See Hemsworth,* 476 F.3d at 491. This type of circumstantial evidence is "evidence that similarly situated employees outside the protected class received systematically better treatment." *Petts v. Rockledge Furniture, LLC*, 534 F.3d 715, 721 (7th Cir. 2008). To clarify, "a plaintiff may use pattern evidence of disparate treatment even if that evidence is not rigorously statistical, although, standing alone, it is insufficient to withstand summary judgment." *Nichols,* 510 F.3d at 782. In other words, evidence under this category of circumstantial evidence need not be statistically reliable to have probative value. *See Sun v. Board of Trs. of Univ. of Ill.,* 473 F.3d 799, 813 (7th Cir. 2007).

Even though the Cook County State's Attorney's Office is not a Defendant to this lawsuit, Egonmwan argues that he can establish Defendants' discriminatory intent because the State's Attorney's Office charged and prosecuted only African-American correctional officers for custodial sexual misconduct. Defendants do not dispute that the Cook County State's Attorney charged three African-American correctional officers – and no one else – after investigating the allegations that certain correctional officers were having sex with detainees. Defendants, however, present evidence that during the investigation many other correctional officers were "suspects of interests," including eleven other African-American officers, two

Hispanic officers, and four Caucasian officers. (Def.'s Stmt. Facts ¶ 27; Pl.'s Stmt. Facts ¶ 65.) Defendants also set forth evidence that the Assistant State's Attorney who approved the criminal charges against the three African-American correctional officers testified that out of the other suspects of interest, Officers Anthony, Swearingen, and Egonmwan were criminally charged due to consistent witness statements and corroborative evidence establishing a case against them. (Def.'s Stmt. Facts ¶ 34.) Finally, Egonmwan fails to set forth evidence that Defendants terminated Officers Swearingen's and Anthony's employment. Based on these facts, the Court would be hard-pressed to conclude that Defendants **systematically** treated correctional officers outside of Egonmwan's protected class more favorably. *See Nichols,* 510 F.3d at 782.

Meanwhile, Egonmwan presents evidence of one Caucasian correctional officer that the Cook County State's Attorney did not charge or prosecute, Officer Paul Usyak. (Pl.'s Stmt. Facts ¶ 67.) Specifically, during the investigation into the allegations of sexual misconduct at the CCDOC, Defendants determined that Usyak was living with a former CCDOC inmate. (Defs.' Stmt. ¶ 72.) After the Sheriff's Office filed disciplinary charges and sought to terminate Usyak's employment for living with a former detainee, Usyak resigned. (*Id.* ¶ 73.) More importantly, there is no evidence in the record that Officer Usyak had sex with any detainee while the detainee was in custody at the CCDOC, which would constitute a violation of General Order 3.8. Accordingly, Usyak is not comparable to Egonmwan in all material respects. *See Tyson v. Gannett Co., Inc.,* 538 F.3d 781, 783 (7th Cir. 2008). Thus, the fact that the Cook County State's Attorney did not charge and prosecute Usyak is not enough evidence to withstand summary judgment. *See Nichols,* 510 F.3d at 782.

Construing all of the evidence and reasonable inferences in Egonmwan's favor, he has

failed to present sufficient circumstantial evidence to proceed under the direct method of proof because the circumstantial evidence presented does not demonstrate intentional discrimination. *See id.* at 783; *see also Petts,* 534 F.3d at 720 ("inferences supported only by speculation or conjecture do not suffice to create a triable issue). In short, when viewing all of the evidence in Egonwman's favor, Defendants' discriminatory intent is not evident. *See Ptasznik,* 464 F.3d at 695 ("circumstantial evidence must point directly to a discriminatory reason for the termination decision.").

### B. Indirect Method of Proof

Because Egonwman has failed to establish that Defendants' reason for terminating his employment were pretext for discrimination, that he performed to Defendants' legitimate job expectations, and that Defendants treated similarly situated correctional officers outside of his protected class more favorably, Egonwman cannot establish his race discrimination claim under the indirect method of proof. *See Hemsworth,* 476 F.3d at 490-91 ("The 'indirect method' of proof involves a subset of circumstantial evidence (including the disparate treatment of similarly situated employees) that conforms to the prescription of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."); *see also Venturelli,* 350 F.3d at 601 (pretext inquiry under direct method substantially the same as indirect method).

## II. Gender Discrimination (Count II)

Next, In Count II of the First Amended Complaint, Egonmwan alleges that Defendants discriminated against him based on his gender in violation of the equal protection clause. Egonmwan maintains that he can establish his gender discrimination claim through direct evidence. More specifically, Egonmwan points to comments made by Harrison, the

Superintendent of the female-only Division 4, including: (1) Harrison's comments to another male correctional officer in January 2003 that it was her intention to get rid of all the male employees in Division 4; (2) Harrison's January 2003 statement to this other correctional officer that the Director and Sheriff had given her permission to make this change; and (3) Harrison's alleged statement to Egonmwan on September 17, 2002, "there's someone else who will be getting out of here real soon, I promise." (Pl.'s Stmt. Facts ¶¶ 18, 25, 26.)

Normally, isolated or stray remarks are insufficient to establish that an employer was motivated by unlawful discrimination under the direct method of proof. *See Hemsworth,* 476 F.3d at 491; *see also Petts,* 534 F.3d at 721. Nevertheless, "a particular remark can provide an inference of discrimination when the remark was (1) made by the decision maker, (2) around the time of the decision, ***and*** (3) in reference to the adverse employment action." *Hemsworth,* 476 F.3d at 491 (emphasis added).

Defendants first maintain that Harrison was not the final decision maker in terminating Egonmwan's employment. Indeed, Egonmwan's employment was statutorily protected by the Cook County Sheriff's Merit Board Act (the "Act"). *See* 55 ILCS 5/3-7012. Under the Act, "no employee in the County Department of Corrections shall be removed, demoted, or suspended except for cause, upon written charges filed with the Board by the Sheriff and a hearing before the Board." *Id.*; *see, e.g., Rizzo v. Sheahan,* 266 F.3d 705, 714 (7th Cir. 2001). Therefore, the Merit Board was the final decision maker in terminating Egonmwan's employment.

Even though Harrison was not the final decision maker, the Seventh Circuit instructs that "statements of a person who lacks the final decision-making authority may be probative of intentional discrimination if that individual exercised a significant degree of influence over the

contested decision." *Sun,* 473 F.3d at 813.  Here, Egonmwan has failed to present evidence that Harrison exercised a significant degree of influence over the Merit Board's decision to terminate his employment.  Although Egonmwan argues that Harrison instigated the investigation against him, the record reveals that Harrison received a letter from a female detainee in Division 4 about correctional officers having sex with detainees and that Harrison forwarded the letter to the CCDOC's Assistant Executive Director and the IAD.  (Def.'s Stmt. Facts ¶¶ 6, 7, 20, 21.)  In addition, the letter that Harrison forwarded did not contain Egonmwan's name or any other correctional officer's name.  (*Id*. ¶ 20, Def.'s Ex. 9, 4/09/03 detainee letter.)  Thereafter, IAD forwarded these allegations to the Cook County Sheriff's Police to investigate.  (*Id.* ¶ 22.)  Assistant State's Attorneys then investigated the allegations of Egonmwan's alleged misconduct and approved felony criminal charges of custodial sexual misconduct against him.  (*Id.* ¶¶ 31, 35, 36.)  After Egonmwan's arrest, Sheriff Sheahan filed a complaint to the Merit Board seeking Egonmwan's separation from the CCDOC.  (*Id*. ¶ 42.)  During Egonmwan's Merit Board hearing, various witnesses testified about Egonmwan's conduct.  (*Id.* ¶¶ 55, 58, 59, 60, 61.)  Harrison did not testify at the Merit Board hearing – nor did Harrison testify at Egonmwan's criminal trial or in front of the grand jury.  (*Id*. ¶¶ 44, 53, 63.)  On January 13, 2005, the Merit Board issued a final order terminating Egonmwan's employment effective as of August 25, 2003.  (*Id.* ¶ 62.)  Based on these facts, Harrison did not have a significant influence over the decision to terminate Egonmwan's employment.  *See Ellis v. UPS, Inc.,* 523 F.3d 823, 829 (7th Cir. 2008).

Moreover, Harrison's remarks were made in September 2002 and January 2003 and the Merit Board terminated Egonmwan's employment in January 2005 – retroactive to August 25,

2003.  Under Seventh Circuit case law, a two or three month gap between a statement and an adverse employment action is not "around the time of the decision" as required by the *Hemsworth* line of cases.  *See Petts,* 534 F.3d at 721 ("comments made three and even two months before the challenged employment action fail to create a reasonable inference of discrimination."); *see also Ellis,* 523 F.3d at 829 (remarks made nearly a year and a half before termination not near to time of decision).  Furthermore, these alleged remarks did not specifically refer to Egonmwan's termination.  *See Hemsworth,* 476 F.3d at 491.  Thus, under the *Hemsworth* factors, Egonmwan has not set forth sufficient evidence establishing any inference of gender discrimination based on Harrison's statements.

Finally, Egonmwan points to the CCDOC's policy – enacted after his arrest – that only female correctional officers could guard the female-only housing tiers in Division 4 as direct evidence of gender discrimination.  As Egonmwan admits, however, this policy not only followed the investigation into the sexual improprieties at Division 4 and his arrest, but the CCDOC transferred the correctional officers to other divisions and did not terminate them.  Therefore, the policy does not point directly to a discriminatory reason for Defendants' actions as required under the direct method of proof.  *See Ptasznik,* 464 F.3d at 695 ("circumstantial evidence must point directly to a discriminatory reason for the termination decision.").  In other words, Egonmwan's termination and suspension were not the result of the policy that the CCDOC implemented after his arrest and suspension.

Construing the facts and all reasonable inferences in a light most favorable to Egonmwan, he has failed to present evidence that points directly to a discriminatory reason for his termination.  The Court thereby grants Defendants' summary judgment motion as to

Egonmwan's equal protection claim based on gender discrimination as alleged in Count II of his First Amended Complaint.

## III.     First Amendment Retaliation Claim (Count IV)

In Count IV of his First Amended Complaint, Egonmwan alleges a First Amendment retaliation claim based on his complaints of sexual harassment and discrimination. *See* 42 U.S.C. § 1983. To establish a prima facie case of First Amendment retaliation, a public employee must show that: (1) he engaged in activity that is protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in his employer's retaliatory action. *See Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1123 (7th Cir. 2009); *Woodruff v. Mason,* 542 F.3d 545, 551 (7th Cir. 2008). Under the first requirement, Egonmwan's speech is constitutionally protected if "(1) the employee spoke as a citizen on matters of public concern, and (2) the interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees." *Nagle,* 554 F.3d at 1123 (quoting *Sigsworth v. City of Aurora,* 487 F.3d 506, 509 (7th Cir. 2007)).[2]

Egonmwan bases his First Amendment retaliation claim on: (1) his September 11, 2002, sexual harassment complaint against Harrison; (2) his complaints about discrimination and retaliation against other officers and about Defendants' violations of their own General Orders;

---

[2] Because the parties fail to address whether Egonmwan's speech was barred by *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), the Court turns to the next step of its analysis, namely, whether Egonmwan's speech was a matter of public concern. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in briefs amounts to abandonment of argument).

(3) his "speaking out" to Harrison about these numerous offenses; and (4) his telling certain CCDOC supervisors about discrimination.

Defendants initially argue that Egonmwan's statements made in the last three sections delineated above are not a matter of public concern because they lack precise content, form, and context. *See Nagle,* 554 F.3d at 1123-24. The Court agrees. Specifically, at this procedural posture, Egonmwan must provide more than the general subject matter of the alleged protected speech – he must provide specific details as to the form, content, and context of what he said. *See id.* at 1124; *see also Brooks v. University of Wis. Bd. of Regents,* 406 F.3d 476, 479-80 (7th Cir. 2005) (vague descriptions of speech fatal to First Amendment retaliation claim). Otherwise, the Court cannot determine whether his speech involved a matter of public concern as opposed to a matter of personal interest. *See Houskins v. Sheahan,* 549 F.3d 480, 490 (7th Cir. 2008) (public concern element must relate to community concern and not personal grievance of interest only to employee). Further, after reviewing the record, there is not enough evidence to determine whether Egonmwan spoke out against matters of public concern because his allegations of protected speech are based on one interrogatory answer that fails to give any further content or context to his statements. (*See* Pl.'s Stmt. Add'l Facts ¶ 13.) Therefore, the Court grants Defendants' summary judgment motion as to the statements highlighted in (2) through (4) above.

The Court thus turns to Egonmwan's first basis of his retaliation claim, namely, that his September 11, 2002, internal sexual harassment complaint against Harrison is protected speech. In Egonmwan's sexual harassment complaint, he specifically stated that on September 20, 2001, Harrison told him that if he went out with her, she would make his life easier and that he rejected

her offer. (Def.'s Ex. 2, Ex. 10, Sex. Harass. Form, QH 748.) Egonmwan further stated that since that incident, he had been harassed repeatedly, including Harrison discussing his personal matters in front of Division 4 personnel and that Harrison asked him personal questions about his life outside of work. (*Id.* at 2-3, QH 749-50.) Also, Egonmwan maintains that he submitted his complaint approximately a year after the harassment started because he had been de-deputized in September 2002. (*Id.* at 4, QH 751.)

Without a cogent explanation, Egonmwan argues that his September 11, 2002, sexual harassment complaint pertains to police protection and public safety. As the content of the complaint reveals, however, Egonmwan was not speaking out for the community as a whole or to some other issue of broader importance. *See Houskins,* 549 F.3d at 490; *Wallscetti v. Fox,* 258 F.3d 662, 667 (7th Cir. 2001). Instead, his internal complaint of sexual harassment involved his concern about his job security after being de-deputized. *See Wallscetti,* 258 F.3d at 667 ("speech relating to only the effect an employer's action has on the speaker is not shielded by the First Amendment, since it rarely involves a matter of public concern."); *see also McKenzie v. Milwaukee County,* 381 F.3d 619, 626 (7th Cir. 2004) ("Sexual harassment is indeed an important matter, but not all speech relating to sexual harassment enjoys constitutional protection."). Egonmwan's form of speech – a sexual harassment claim filed on an internal CCDOC form – further supports the conclusion that his complaint was not a matter of public concern because he did not bring his harassment claim into the view of those outside the CCDOC's administrative structure. *See Wallscetti,* 258 F.3d at 667. In addition, Egonmwan has not introduced any evidence that he expressed concerns about the alleged sexual harassment beyond his own concerns related to his treatment at the CCDOC. *See Phelan v. Cook County,*

463 F.3d 773, 791 (7th Cir. 2006). In short, the content, form, and context of Egonmwan's complaint reveal that his purpose was to advance his own personal interest and not a public concern. *See id.*

Viewing the facts in favor of Egonmwan, he has failed to set forth evidence creating a genuine issue of material fact for trial that his statements were matters of public concern as required for his First Amendment retaliation claim. *See Nagle,* 554 F.3d at 1123. Therefore, the Court grants Defendants' summary judgment motion as to Count IV of the First Amended Complaint.

## IV.    Qualified Immunity & Monell Claims

Because Egonmwan has failed to raise a genuine issue of material fact for trial that Defendants violated his constitutional rights, the Court need not address the individual Defendants' qualified immunity arguments. *See Williams v. Rodriguez,* 509 F.3d 392, 398 (7th Cir. 2007). Further, because Egonmwan has not established that he was deprived a constitutional right, Egonmwan's arguments under *Monell* concerning an alleged custom, policy, pattern, or practice necessarily fail. *See Houskins v. Sheahan,* 549 F.3d 480, 493 (7th Cir. 2008) (collecting cases).

## CONCLUSION

For these reasons, the Court grants Defendants' Summary Judgment Motion pursuant to Federal Rule of Civil Procedure 56 in its entirety. Because the Court considered Defendants' objections to Plaintiff's Rule 56.1 Responses and Statements within the context of each fact, the Court denies Defendants' Motion to Strike as moot.

**Dated:** April 27, 2009

**ENTERED**



_____
**AMY J. ST. EVE**
**United States District Court Judge**